## COLINE GASOLINE CORP. v. YANCEY et al.

No. 22443. Opinion Filed April 26, 1932.

Rehearing Denied May 24, 1932.

Rainey, Flynn, Green & Anderson, M. M. Gibbens, and L. A. Marrs, for petitioner.

R. R. McCornack, for respondent.

KORNEGAY, J. This is an original proceeding to review the action of the Industrial Commission in making an award, which is as follows:

"1. That it is admitted by the respondent herein that the claimant, Orbie Yancey, sustained an accidental personal injury arising out of and in the course of his employment with respondent on July 20, 1930, nature of said injury being an injury to the eyes.

"2. That, as a result of said injury, claimant was temporarily totally incapacitated from any kind of work from the date of the injury for seven days, at which time he returned to work.

"3. That, in addition to claimant's temporary total disability, the claimant has suffered the permanent partial loss of use of his eyes to the extent of 25 per cent. by reason of said injury.

"4. That the average daily wage of the claimant at the time of the injury was $4 per day for seven days per week.

"The Commission is of the opinion: By reason of the aforesaid facts, that claimant is entitled to temporary total compensation from July 20, 1930, to July 27, 1930, less the five-day waiting period, at the rate of $17.31 per week, being two days, which amounts to $4.95, for temporary total disability, and in addition thereto claimant is entitled to compensation at the rate of $17.31 for a period of 125 weeks, for the permanent partial loss of use to the extent of 25 per cent. of both eyes, amounting to $2,163.75.

"It is ordered: By reason of the aforesaid injury, that within 15 days from this date, the respondent, or its insurance carrier, pay to the claimant the sum of $2,168.-70, less any compensation heretofore paid by reason of said afore-mentioned injury for the temporary total, and 25 per cent. permanent partial disability to the claimant's eyes:

"It is further ordered: That within 30 days from this date, the respondent, or its insurance carrier, file with the Commission proper receipt or other report evidencing compliance with the terms of this order."

From an inspection of the record, it appears that this proceeding started as a claim against the Coline Oil Corporation, and the employee's first notice of injury stated that Dr. McHenry had been furnished as a physician, and the claim was made for injury arising from "exposure to light and heat from electric welding torch for about 24 hours without any protection for eyes," and the injury was claimed to be partial loss of vision in both eyes.

The attending physician's report, Dr. D. D. McHenry, covered an accident happening on the 7th of July, 1930, and in giving a description of the injury, it was "intense congestion and redness of conjunctiva. Many very fine facets, minute ulcers all over both cornea and worse." The treatment was "mild antiseptic—rest and cold applications," and his report was that, on the 11th of July, 1930, the ulcers were all healed, and the vision was 20/20 in each eye, and on the 7th of July the vision was 20/30-2 of the right eye and 20/20.2 of the left eye, and the ulcers were not healed.

The respondent, appearing by attorneys, denied the injury to the eye, and stated that at the time of the alleged injury claimant was working for the Coline Gasoline Corporation, and that he continued to work until discharged in August, 1930, and that his discharge from the employment of the Coline Gasoline Corporation did not have any connection with the injury to his eyes. It was verified by H. L. Briggs, purporting to be the vice president and general manager of the Coline Oil Corporation.

Notice of the hearing was given, and, on the 29th of April, 1931, the parties announced ready for trial, and the claimant testified, without objection, that he was working for the Coline Gasoline Corporation at the time he was hurt, and had been employed for some months by them, and the respondent's counsel objected to going fur-

ther because it was the Coline Gasoline Corporation, instead of the Coline Oil Corporation, against whom claim was made.

The Commission allowed the change from "oil" to "gasoline," in the name, over the objection of the respondent. The Commission made the change in its records, and the Coline Gasoline Corporation thereupon objected and excepted, and the examination proceeded, and the attorneys for the gasoline company cross-examined. On the 30th of April, 1931, the Commission made the order allowing the word "gasoline" to be substituted for "oil" in the various documents, and the gasoline corporation, by its attorneys, said they were ready to proceed for the Coline Oil Corporation, and Mr. Gibbens, one of the attorneys, said he did not know whether he was ready to proceed for the Coline Gasoline Corporation or not, and finally announced that they were ready to proceed for the Coline Oil Corporation and appeared as attorneys for the Coline Gasoline Corporation, and thereupon the Industrial Commission told them to proceed, and called the first witness. Opportunity for continuance was by the Commission given to the gasoline company, which it did not use. Apparently from that time on the gasoline corporation was not very much opposed to trial, as it seemed to have raised no further objection and introduced evidence and cross-examined other witnesses.

A brief has been filed on behalf of the Coline Gasoline Corporation, complaining of the action of the Industrial Commission in making the award, and there is a resume of the testimony and a large part of the brief is devoted to the alleged error in changing the name, after giving an abstract of the evidence. The first propositon is stated as follows:

"The Commission erred in allowing claimant to amend his first notice of injury and claim for compensation by substituting the Coline Gasoline Corporation as respondent in place of the Coline Oil Corporation, and in ordering the trial to proceed without permitting the Coline Gasoline Corporation the usual ten-day period within which to file an answer, and without requiring notice to be given, as required by the statutes."

Some court cases are cited bearing upon the point, one being the case of Hilliard v. St. Louis-S. F. R. Co., 98 Okla. 22, 223 P. 877. It appears that the original company there was the St Louis-S. F. Railroad Company, and that a new corporation by the name of the St. Louis-S. F. Railway Company was the owner and operator of the railroad that caused the injury, and on the trial this fact developed, and the court dismissed the petition, and there is quite a lengthy discussion in the opinion and a distinguishing of a former case, St. L. & S. F. R. Co. v. Ledbetter, 83 Okla. 79, 200 P. 701. The former case was based on the property being owned by the company in a different name. The latter case was based on a reorganization having been had and a new corporation formed. Extracts from 47 Corpus Juris are made, and the case of Mull v. Easley Lbr. Co., 121 S. C. 155, 113 S. E. 356, is cited, wherein names were changed and identity of person was changed, and the case of Gibson Refrigerator Co v. Brody (N. J.) 146 Atl. 872, was cited, where there were some fictitious names, and the case of Avery v. Jayhawker Gasoline Co., 101 Okla. 286, 225 P. 544, holding it erroneous to allow a pleading to be amended so as to show new claim or defense, and the case of State Nat. Bank of Shawnee v. Central Nat. Bank of Tulsa, 146 Okla. 142, 293 P. 1007, is cited and quoted from. The case of Fehlman v. Kinnear, 85 Okla. 282, 205 P. 1091, is cited on the subject of the action being brought in the name of the real party in interest.

As applied to this case, it appears to us that when the accident happened, the gasoline corporation knew of it, and brought the man to its doctor, who later was used by it in an effort to establish that he was a malingerer. It is further evident that the oil corporation and the gasoline corporation were very closely allied, so closely that they stayed in the same room and had the same vice president, one of them evidently dealing in oil and the other in gasoline. They evidently used the same attorneys.

It is plain, however, that if the gasoline corporation had any ground or objection to the complaint, it was afforded full opportunity by the Commission to get in whatever evidence it wanted, and was afforded the opportunity to have the case continued. It is further plain that court procedure, in all of its strictness, scarcely applies to the action of an administrative board, whose jurisdiction is made continuous, probably with a view of correcting some of the harsh rulings of court procedure, and it is further evident that in this case the result would probably have been the same, had the name of Coline Gasoline Corporation been used, instead of Coline Oil Corporation, and the same people would have defended it, and the same witnesses used, especially as there can be no doubt that the doctor to whom the party was taken by the employee on the job,

though making a report as though it was the Coline Oil Corporation, was, in fact, making a report for the Coline Gasoline Corporation.

Besides, it is our duty, even in court cases, to disregard technical errors that do not affect substantial rights of the parties. See section 2822, C. O. S. 1921, as follows:

"2822. Harmless Error. No judgment shall be set aside or new trial granted by any appellate court of this state in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right"

—and section 319, C. O. S. 1921, as follows:

"319. Immaterial Error to be Disregarded. The court, in every stage of action, must disregard any error or defect in the pleadings or proceedings which does not affect the substantial rights of the adverse party; and no judgment shall be reversed or affected by reason of such error or defect"

—and our statute of jeofails applies to criminal matters, as follows:

"2943. Informalities not Fatal if not Prejudicial. Neither a departure from the form or mode prescribed in this chapter in respect to any pleadings or proceeding, nor an error or mistake therein, renders it invalid, unless it has actually prejudiced the defendant or tended to his prejudice, in respect to a substantial right."

Besides these, there is another provision of the statute that our attention is called to, in the brief of the claimant, about correcting the procedure by changing names of parties. We should not be more exacting in Industrial Commission procedure than the statutes require in court procedure.

The other proposition that is urged upon our attention, however, goes to the merits, and it is proposition 2, found on page 35 of the brief of the petitioner, as follows:

"The evidence fails to support the findings and award that claimant was temporarily totally incapacitated for seven days after the date of injury."

Complaint is made about the award being too large, that is to say, $4.95. It is conceded by claimant that a mistake was made in the award to that amount. The Industrial Commission can make an allowance of this in the settlement that will be had in the case under its supervision.

The third proposition is that the evidence does not support the finding that claimant suffered 25 per cent. loss of use of eyes, by reason of injury, because the evidence did not show what claimant's vision was prior to the alleged injury, and for the further reason that the evidence disclosed that claimant's eyes were normal after recovering from the alleged injury, and that he performed other work, subsequent thereto, which may have caused a loss of vision. This necessitates a review of the evidence that was before the Commission. This we have done.

According to the testimony of the claimant, there was no defect in his vision before the asserted injury. According to the testimony of the doctor that was introduced on behalf of the respondent, he had practically perfect vision after the accident. The accident kept him from work for some days, and there were a lot of electric burns on his eye, resulting in blisters over the cornea. The doctor who examined the claimant on his behalf was of the opinion, taking the history of the case, that the defect in vision of the claimant was attributable to this injury. He used the term "electric retinitis," as afflicting the party. His examination, made sometime before the hearing, clearly attributed the variation from normal in the eyes of the claimant to the exposure to the rays created by the electric welding.

It appears in the evidence that for about 22 hours continuous, the claimant was working as the helper of an electric welder, and that the ordinary precautions to avoid eye injury were not taken, probably as a result of the failure of the company to have the appliances that are used for that purpose for the use of the employee. It was what is known as a "rush job," as it was necessary for the plant to be finished at once. The result was that for 22 hours the claimant continued work in the rush. He had worked, however, around welding before, but nothing in the way of eye injury had before this happened to him.

Such unusual exposure, under the evidence in this case, would have a natural tendency to cause the injury. The claimant and some of his associates testified to facts that would so indicate, basing their statements on personal experience, and the doctor who examined him professionally so declares. This doctor, however, is contra-

dicted by the doctor who examined on behalf of the company and to whom the company sent the claimant for treatment. It appears from the testimony of the doctor employed by respondent, and from his report, that notwithstanding the blisters and the conjunctivitis, later his vision was practically perfect. The doctor's report shows practically a 20/20 vision in each eye on the 11th of July, and there was only a slight conjunctivitis at that time. In the report of April 28, 1931, the claimant was claiming very much pain in the eyes, and the doctor's claim was that there was no reason for it, and no pathology, and that he gave a vision of 20/100 in the right eye, but the examiner, by putting a malingering test, got a vision of 20/40-2, and the other eye gave a vision of 20/30-2, and his opinion was that he could see much better than this.

The other doctor who examined him on the 28th of April, 1931, found the vision of 20/50 in the left eye, and in the right eye 20/100, with no improvement, and double vision permanent, as he thought. He claimed to have applied malingering tests, and was examined and re-examined, and also gave some account of the effect of the exposure to electrical welding, and described the electric retinitis as being an inflammation of the retina coming from exposure to rays.

The associates of the claimant also testified, and as a result of all of the testimony, apparently, the Commission made the findings of fact as it did. Under the law we are bound by the Commission's finding of fact, if there is any evidence reasonably tending to support it, even though we might have found the other way had we been triers. In this case, the Commission found for the claimant. The Commission observed the witnesses, both professional and lay. It is conceded that the $4.95, under the law, was improper, and the award of the Commission is affirmed, with directions to allow for the $4.95 in the settlement.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., and CULLISON and ANDREWS, JJ., absent.